**In re Anonymous Nos. 5 D.B. 84, 64 D.B. 86, and 82 D.B. 86**

Disciplinary Board Docket nos. 5 D.B. 84, 64 D.B. 86 and 82 D.B. 86.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

TUMOLO, *Member,* January 21, 1988—Pursuant to rule 208(d) Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petitions for discipline.

## HISTORY OF PROCEEDINGS

Respondent was suspended from the practice of law by order of the Supreme Court of Pennsylvania on March 16, 1984. The order of suspension was entered pursuant to the emergency temporary suspension provisions of rule 208(f) Pa.R.D.E. Three petitions for discipline were filed subsequent to the suspension order.

### *Petitions for Discipline*
### *Petition 64 D.B. 86*

The first petition for discipline was filed on October 3, 1986 and contained four charges. The first charge concerned respondent's alleged failure to pay the costs assessed in connection with the suspension order. The second charge alleged that respondent represented a client after his suspension and that he failed to inform the appropriate individuals of his suspension. The third charge alleged that respondent failed to promptly relinquish the file of a client after the client requested the file. The fourth charge alleged the respondent failed to take appropriate action to administer two estates and that he failed to promptly relinquish the estate files, after his suspension, as requested by the personal representative of one of the estates.

Charges I and II alleged the violation of D.R. 1-102(A)(1) dealing with an attorney violating a disciplinary rule. Charges II and IV alleged the violation

of D.R. 6-101(A)(3) which prohibits an attorney from neglecting a legal matter. Charges II and IV alleged the violation of D.R. 1-102(A)(6) which prohibits an attorney from engaging in conduct that adversely reflects on the attorney's fitness to practice law. Charges III and IV both alleged the violation of D.R. 9-102(B)(4) which requires an attorney to promptly pay or deliver to the client as requested by the client properties in possession of the attorney which the client is entitled to receive. Charge II also alleged a violation of D.R. 1-102(A)(4) which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

## Petition 82 D.B. 86

The second petition for discipline was filed on November 17, 1986 and contained six charges. Charges I and VI relate to respondent's handling of personal injury matters. Charges II through V deal with respondent's actions and inaction in various estate matters.

All six charges alleged the violation of D.R. 6-101(A)(3) which prohibits an attorney from neglecting a legal matter entrusted to him. Charges I and II alleged the violation of D.R. 7-101(A)(2), which prohibits an attorney from intentionally failing to carry out a contract of employment. Charges I, II, V and VI all alleged the violation of D.R. 1-102(A)(6) which prohibits an attorney from engaging in conduct that adversely reflects on his fitness to practice law. Charges I, II, IV and VI all alleged the violation of D.R. 1-102(A)(4) which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Charges II, III, IV and V each alleged the violation of D.R. 9-102(B)(4), which requires that an attorney promptly

pay or deliver to the client as requested by the client funds or other property in the possession of the attorney which the client is entitled to receive. Charges II and V alleged the violation of D.R. 9-102(B)(3), which requires that an attorney maintain complete records of client funds and property and account to the client for such funds or property.

Charge IV also alleged the violation of D.R. 9-102(B)(1), which requires that an attorney shall promptly notify a client of the receipt of the client's funds or other property. Charge IV further alleged a violation of D.R. 5-103(B), which prohibits an attorney from advancing or guaranteeing financial assistance to a client in connection with contemplated or pending litigation.

Charge V also alleged a violation of D.R. 7-101(A)(3) prohibiting an attorney from intentionally prejudicing or damaging his client.

Charge VI also alleged a violation of D.R. 6-102(A), prohibiting an attorney from attempting to exonerate himself from or limit his liability to a client for his personal malpractice.

## Petition 5 D.B. 84

The third petition for discipline was filed on November 24, 1986. This petition consisted of six charges.

Charges I, II, III and VI related to respondent's alleged mishandling of estates including failure to carry out the administration of the estates, misappropriation of funds, failure to keep adequate records, and failure to turn over property of clients. Charge III related to respondent's alleged mishandling of a personal injury matter. Charge V related to respondent's checking accounts, both personal and client escrow accounts, and the commingling of client and personal funds in the accounts.

All six charges alleged the violation of D.R. 1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. All six charges alleged the violation of D.R. 1-102(A)(6), which prohibits an attorney from engaging in any other conduct that adversely reflects on his fitness to practice law. All six charges also alleged the violation of D.R. 9-102(B)(3), which directs that an attorney shall maintain complete records of all funds and other property of a client in the possession of the attorney and account to the client.

Charges I and II alleged the violation of D.R. 6-101(A)(3), which prohibits an attorney from neglecting a legal matter entrusted to him.

Charges I and III alleged the violation of D.R. 7-101(A)(2), which prohibits an attorney from intentionally failing to carry out an employment contract with a client.

Charges I and VI alleged the violation of D.R. 9-102(B)(4), which requires that an attorney promptly pay or deliver to a client upon request of the client funds or other property which the client is entitled to receive.

Charges II, V and VI alleged the violation of D.R. 9-102(A), dealing with the deposit of client funds into an identifiable bank account in which no funds of the lawyer are deposited.

### Hearing Committee Proceedings

The petitions for discipline were consolidated for hearing and referred to Hearing Committee [   ]. A prehearing conference was held on April 11, 1987 and a hearing was held on May 26, 1987. The hearing committee filed its report on September 17, 1987.

The hearing committee recommended that respondent be disbarred. The committee stated several reasons for recommending disbarment rather than suspension. The committee noted that respondent acted dishonestly, that he was unresponsive to inquiries, that he acted deceitfully, that he habitually and repeatedly neglected legal matters, that he lacked understanding or respect for rules of conduct, and that he had been disciplined on four previous occasions with no apparent effect. The hearing committee was of the opinion that disbarment was necessary to protect the public.

The hearing committee found the following violations of the disciplinary rules:

(1) Eleven violations of D.R. 1-102(A)(4) prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(2) Eleven violations of D.R. 1-102(A)(6) prohibiting an attorney from engaging in any other conduct that adversely reflects on fitness to practice law.

(3) Ten violations of D.R. 6-101(A)(3) which prohibits an attorney from neglecting a legal matter entrusted to him.

(4) Eight violations of D.R. 9-102(B)(4) requiring an attorney to promptly pay or deliver to the client as requested by a client funds or property of the client.

(5) Seven violations of D.R. 9-102(B)(3) requiring an attorney to maintain complete records of client funds and properties and to account to the clients for the funds or properties.

(6) Four violations of D.R. 7-101(A)(2) prohibiting an attorney from intentionally failing to carry out contract of employment.

(7) Three violations of D.R. 9-102(A) requiring an attorney to maintain client funds in an identifiable bank account.

(8) Two violations of D.R. 1-102(A)(1) prohibiting an attorney from violating a disciplinary rule.

(9) A violation of D.R. 9-102(B)(1) requiring an attorney to promptly notify a client of the receipt of funds or property of the client.

(10) A violation of D.R. 7-101(A)(3) prohibiting an attorney from intentionally prejudicing or damaging a client.

(11) A violation of D.R. 6-102(A) which prohibits an attorney from attempting to exonerate himself from or limit his liability to a client.

(12) A technical violation of D.R. 5-103(B) prohibiting an attorney from advancing financial assistance to a client in connection with contemplated or pending litigation.

## Other Proceedings

Respondent filed a brief on exceptions arguing that a five-year suspension, retroactive to March 16, 1984, was the appropriate disposition of the matter rather than disbarment. Petitioner replied with a letter brief opposing respondent's exceptions arguing that disbarment is the proper discipline in this matter and that the disbarment should not be retroactive to 1984.

Oral argument was held, as requested by respondent, on November 10, 1987. This matter was adjudicated by the board at its November 11, 1987 meeting.

## FINDINGS OF FACT

(1) Respondent, [     ], was born March 16, 1926, admitted to practice law in the Commonwealth of Pennsylvania in 1964, and last maintained an office in association with [A] at [     ].

(2) Following admission to practice law, respondent was employed by the [     ] County firm of [B] for less than one year; by the firm of [C] for approximately two years; in association with [D]; as an employee of [E]; as an employee of [F]; and, commencing in approximately 1967, in association with [A].

(3) Respondent has never married and has no dependents.

(4) During the course of his practice, respondent also served as a borough councilman for [     ] Borough and, subsequently, served as solicitor for that borough from 1982 through 1984.

(5) Respondent resides at [     ].

### 5 D.B. 84
#### Charge 1

(6) In May 1981, respondent undertook representation of the estate of [G] including consummation of an agreement to transfer and sell real estate comprising the [G] home. In December 1981 he received the purchase money from the buyer, [H], and deposited it to his personal checking account. Respondent neglected this client matter — no deed from the seller to the buyer was recorded until 10 months after payment, no inheritance tax returns were prepared or filed, no inheritance tax has been paid, and the will of the decedent was not probated until 18 months after undertaking the representation. He did not complete the undertaking on the client's behalf. Respondent did not account to the executor or the parties to the transaction when requested and used the funds provided by the purchaser for his own purposes. Respondent did not keep appropriate records of the client's funds. He misrepresented the facts of the transaction and undertaking to his client and to the Investigatory Hearing Examiner when queried. The funds due

and owing to the heirs were withheld from December 1981 until May 1983.

## Charge 2

(7) In approximately February 1979, respondent was appointed administrator c.t.a. of the estate of [I] upon the death of her last surviving executor, her brother, [J]. Respondent undertook representation of the estate of [J] also. Respondent neglected these client matters — through July 1983, no inventory of either estate was made, no inheritance tax returns were filed, no inheritance taxes were paid, and no accounting was made to the heirs of the estates upon their inquiry and request. Respondent neglected to promptly acquire and invest the assets of the estates, made no effort to liquidate the assets, and made no effort to distribute the assets. Funds and assets acquired as part of the [I and J] estates were deposited to various unidentified accounts rather than placed in trust for the benefit of the estates. Respondent deposited $12,575.18 of estate funds to his personal checking account and utilized the funds for his own purposes, although on February 17, 1984, Respondent did deposit $15,467.12 to the [I and J] estate account. Respondent did not keep appropriate records of the client's funds and the transactions involving his representations of these estates.

## Charge 3

(8) On July 12, 1979, [K] was injured in an automobile accident. Her representation was undertaken by Attorney [L] who died October 14, 1980. Thereafter, respondent undertook representation of [K] in conjunction with the [L] estate, with a fee splitting arrangement therefor. In December 1981 a settlement was reached for $45,000 with the funds being deposited to respondent's "Escrow Account

1." The said funds were in part diverted to payments on behalf of the [G] estate noted in Charge 1, and $23,012.55 was withdrawn by respondent for his own use. Respondent's maximum allowable fee in accordance with the fee agreement undertaking was $9,000. Respondent made no accounting to the client through December 1983 and did not satisfy any claim for medical expenses from the funds including a Blue Cross subrogation claim and claims of physicians for payment of their fees. As of the date of complaint, the "Escrow Account 1" had a balance of less than $5,000. Respondent did not keep appropriate records of the transactions involving this client's funds, and did not complete the matter undertaken.

### Charge 4

(9) Following the death of Attorney [L], respondent acted as attorney for the estate, having been retained by Attorney [L's] widow. Because respondent did nothing in handling the estate, he was discharged in favor of Attorney [M] in early February 1981. Attorney [L's] widow did not authorize respondent to take over any cases being handled by her late husband, but respondent did so nevertheless. In February 1981, Attorney [M] requested that respondent return all documents, papers and the like to the possession of the estate. Although respondent promised to provide a list of Attorney [L's] cases in which respondent had been engaged as counsel by [L's] clients, he failed to do so. The estate of Attorney [L] was prejudiced by failure to have facts upon which to file necessary court papers and tax returns. Respondent failed to maintain separate trustee accounts for funds collected on behalf of [L's] clients to which the [L] estate was entitled to partial distribution. Respondent did not maintain records of his transactions associated with the [L]

estate. Although failing to account therefor to the [L] estate, respondent handled at least four matters in which Attorney [L] was counsel prior to his death, receiving therefor fees totalling $12,000.

## Charge 5

(10) Respondent failed to maintain records of transactions for and on behalf of client matters. Respondent did advance funds to his client, [N], in anticipation of a successful conclusion of litigation despite the prohibitions of Disciplinary Rule 5-103(B); he neglected to timely report to the [L] estate for funds received, which funds had been deposited to his personal account. On several occasions he utilized client funds to pay personal tax obligations and for the making of investments to his Keogh Plan. Respondent failed to produce records and an accounting in spite of having been issued a subpoena therefor and repeatedly evaded every effort to ascertain his dealings with client funds and other entrusted matters. Respondent repeatedly used his personal checking account as a conduit and repository for client funds. Respondent advanced funds from the "[K]" trustee account to [O], in anticipation of a successful conclusion to the [O] litigation.

## Charge 6

(11) Upon the death of Attorney [L], respondent undertook representation of [P], administrator of the estate of [Q], and thereupon committed various fraudulent and dishonest acts including receipt and appropriation of funds to his own account, signing documents including checks on behalf of the estate although unauthorized to do so, failing to deposit funds received by the estate in the estate account, drawing of checks on the estate account when he had no signatory privilege. Respondent also withheld information and documents from the adminis-

trator of the [Q] estate, all to the prejudice and detriment of the estate. Respondent failed to turn over files, documents, and funds in his possession which belonged to the estate and were properly transferable to the administrator.

## 82 D. B. 86
### Charge I

(12) In October 1971, respondent was retained to represent [R] in respect to a claim for personal injuries sustained by [R] as the result of an automobile accident in September 1970. Respondent did not communicate with the client and his referring counsel in Ohio; neglected the matter; and failed to complete the undertaking. Respondent obtained an arbitration award of $6,400 on April 1, 1977. Respondent was instructed to appeal that award and filed notice of appeal but did not perfect the appeal. On October 7, 1977 the appeal was quashed by the [      ] County Court. Although requested over the next four years to provide information pertaining to the appeal, respondent did not communicate with the client and referring Ohio counsel: The fact that the appeal had been quashed was never communicated by respondent to referring counsel or the client. In August 1984, other counsel secured the $6,400 awarded at arbitration from the defendant's insurer. No interest was obtained because judgment was never entered on the arbitration award by respondent. In August 1984 an action was filed by the client against respondent for damages arising from his negligence in furthering the personal injury action. An arbitration award was entered against respondent on March 27, 1986 for $3,800. No appeal has been taken, judgment has been entered, and no payment has been made as of May 11, 1987.

## Charge II

(13) Following the death of [S] in October 1982, an estate was opened by other counsel based upon a 1974 will. Respondent, however, had in his possession a 1978 will which respondent had written for [S] in which respondent was named as a specific legatee and executor. Although other counsel had marshalled documents and assets of the estate, which documents he relinquished to respondent on notice of the superseding will in January 1983, it took respondent two months to admit the later will to probate and to receive letters testamentary therefor. From March 1983 through November 1986, respondent did little, if anything, toward resolution of the estate with the exception of attending a closing for sale of the decedent's real estate, receiving the proceeds of sale which were placed in an estate account over which he had signatory power, and making periodic distribution to the legatees including himself. Respondent took no action to pay bills of the estate, file an inventory, file an accounting, file an inheritance tax return, or pay inheritance taxes. Subsequently, after repeated requests and inquiries, respondent turned the file materials over to other counsel retained by one of the legatees.

## Charge III

(14) Following the death of [T] in December 1977, respondent met with the decedent's surviving spouse and undertook to represent the estate. In so undertaking, respondent obtained letters of administration for the spouse in January 1978 and promised to thereafter prepare and file 1977 joint income tax returns, file a 1978 income tax return on behalf of the surviving spouse, file an inheritance tax return, and achieve transfer of the decedent's residence to the surviving spouse by obtaining relin-

quishment of the decedent's brother's interest in that residence. As of his suspension on March 16, 1984, respondent had accomplished none of these tasks although having received various governmental notices from the Internal Revenue Service and the Inheritance Tax Department, and having received numerous inquiries and requests from the surviving spouse respecting certain tax matters. Following his suspension, respondent released the documents in his possession to the surviving spouse in April 1984, without having completed the representation undertaken more than six years previously.

### Charge IV

(15) [U] died intestate September 22, 1975 as the result of an automobile accident. Acting as attorney for the estate, respondent secured a grant of letters of administration to one of her children. Claims totalling approximately $2,300 were made by [V] Brothers and [W] Company against the estate but no action was taken by respondent in respect thereto. Assets having a total value in excess of $2,000 were inventoried from the decedent's safe deposit box by Inheritance Tax authorities. Respondent took no action to file an inventory or an inheritance tax return. In December 1978, the administrator of the estate was cited for failure to file an inheritance tax return. The citation and claim were subsequently withdrawn when an inheritance tax "Debts and Deductions" schedule was filed in June 1979 although no inheritance tax return reporting assets was filed by the administrator or respondent. The real estate owned by the decedent was sold at sheriff's sale in December 1986 upon default in payment of a mortgage thereon. Respondent commenced a personal injury action in respect to the decedent's

death, which action was settled in July 1978 for $10,000 at a negotiation conference in judge's chambers. Although a release was executed by the administrator in August 1978 and a check was issued by the defendant's insurance carrier in the personal injury action, respondent took no action to satisfy the docket and receive the check until December 28, 1978. Thereafter, respondent held the settlement check and took no action to negotiate it on behalf of the estate, to secure negotiation by the administrator, to pay estate expenses, or to make distribution of the proceeds in spite of receiving numerous requests by the administrator and representatives of the defendant's insurance carrier.

## Charge V

(16) On August 15, 1971, [X] died testate, a resident of [    ] County, owning personal property. Her will, which had been prepared by respondent, named respondent as executor. On August 17, 1971, respondent probated the will, receiving a grant of letters testamentary, and thereafter acted as attorney for the estate. At the time of the grant of letters, respondent was in sole possession and control of all personal effects of the decedent. The estate was finally distributed by decree of distribution in December 1978 but only after citations in 1978 upon respondent and an investigatory hearing by petitioner regarding delinquencies and handling of the estate. During this seven-year period, respondent had accumulated liquid assets of nearly $8,000 in October 1971 from savings accounts and insurance proceeds; had dealt with personal property of the decedent; and had incurred obligations of the estate by failure to terminate the decedent's lease for 12 months and terminate utility services to the leasehold. Furthermore, respondent neglected

to pay the funeral bill for over two years until cited in connection with a petition to remove him as executor. Additionally, respondent took no steps to inform the administrator of the estate of a beneficiary of a one-half share of the [X] estate that there were estate assets to be distributed to that beneficiary's interest. Respondent's failure to act was prejudicial and detrimental to the [X] estate, costing monies to that estate for obligations incurred unnecessarily because of respondent's inaction. Resolution and distribution of the estate was only accomplished after court action maintained by the administratrix of the estate of the one-half heir to have respondent held in contempt of court.

### Charge VI

(17) On January 12, 1977, [Y] sustained an injury to her knee while disembarking from a [Z] bus. Approximately one week later she contacted respondent to represent her in a claim for damages and an employment contract was executed, although no copy was given to the client. The client heard nothing of her claim for approximately 22 months despite contacting respondent on numerous occasions requesting information. In November 1978 respondent misrepresented to the client that he was making efforts to obtain a satisfactory disposition of her case, that the [Z] was on notice of her claim, and that a settlement offer might be made without court action but that if it was necessary to try the case, a hearing would occur in February 1979. In fact, to that date respondent had given no notice to the [Z] of any claim. Thereafter, because the threshold would not be met to permit a suit for damages, the [Z] forwarded forms permitting a claim for first party benefits. Respondent took no action with respect to the PIP benefits forms on behalf

of his client. After complaint by the client to petitioner, and advice to respondent of the complaint, respondent contacted the client and advised that her claim would be settled for $1,000. Subsequently, respondent forwarded to the client his personal check for $1,000. No settlement has ever been made with the [Z]. Respondent misrepresented the transaction and dealings in this matter to the client after having neglected the matter.

### 64 D.B. 86
### Charge I

(18) Respondent was suspended March 16, 1984 by the Supreme Court pursuant to rule 208(f) and was required, thereby, to promptly pay costs of $1,062.37. To this date the costs have not been paid.

### Charge II

(19) Respondent was suspended March 16, 1984 and ordered by the Supreme Court to immediately notify all of his clients of his suspension. Nevertheless, on March 20, 1984, respondent caused the reissuance of a writ of summons in the case of [AA] and [BB] against [CC] University Hospital, [DD] Hospital of [    ], and Drs. [EE], [FF], and [GG] at G.D. [    ] in [    ] County. Respondent caused the writ to be delivered to the sheriff's office of [    ] County for service. Respondent accepted service of a rule issued to the plaintiffs to file their complaint on April 18, 1984. Respondent did not inform defense counsel that he was disabled from representing the [AA and BB] because of his suspension. Respondent attempted to persuade the [AA and BB] to permit his associate, [A] to take over their representation.

### Charge III

(20) In August 1983 respondent undertook to represent [HH] in an attempt to secure a return of

$529 on [HH's] behalf from [II] Travel Agency. In April 1984 [HH] received notice that respondent had been suspended. On April 26, 1984 [HH] requested, by certified mail received by respondent that date, that respondent return all information regarding the complaint against [II] Travel Agency to her address by May 3, 1984. [HH] did not receive a return of the items requested until September 14, 1984 from Attorney [A] although having requested many times that the respondent comply with her request.

## Charge IV

(21) In September 1978 respondent undertook representation of the estate of [JJ], who died testate on September 10, 1978 seized of real estate located in [     ] Borough. On September 21, 1978, respondent caused letters testamentary to be issued to the decedent's daughter as executrix of the estate. In spite of receiving notices that no inheritance tax return had been filed, respondent took no action to comply with the requirements for filing an inheritance tax return up to the date of his suspension. When the executrix also died, respondent acted as attorney for the executrix's estate and caused the filing of an application of letters of administration by her son. No action was taken by respondent in respect to the real estate owned by the [JJ] estate nor was any action taken in respect to the filing of inheritance tax returns. When the personal representative of the executrix's estate was notified of respondent's suspension, he sought counsel who demanded that respondent turn over to him files held by respondent in regard to the two estates. Respondent made no delivery of the said files until September 1984 after numerous additional requests.

## DISCUSSION

The disciplinary board has determined that disbarment is the appropriate discipline for respondent. Respondent has committed numerous violations of the disciplinary rules. This is not a case of one or two isolated incidents of misconduct. Respondent's misconduct has been continuous and consistent over a 16-year period from 1971 through 1984 when he was suspended, and has continued even after his suspension.

The nature of respondent's conduct also warrants disbarment. Respondent's conduct has often prejudiced the interests of his clients. Respondent has frequently misrepresented to the client the status of the client's case. Respondent has exhibited blatant disregard for the funds and property of clients which were entrusted to him.

Turning to the issue of whether respondent's disbarment should be retroactive or prospective, the board has determined that the date of disbarment should be retroactive to the date of respondent's suspension in 1984. Disciplinary counsel argued in the letter brief opposing respondent's exceptions, that disbarment in this case should be prospective because of the egregiousness of respondent's conduct. The Pennsylvania Supreme Court has stated that the threshold question when reinstatement is sought after disbarment, is "whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice nor subversive of the public interest." Pa. R.D.E. 218(c)(3)(i). In light of this standard for determining whether a disbarred attorney may be reinstated, it is apparent that the date of disbarment is irrelevant to the determination. The attorney's

conduct may have been so egregious that no matter how long that attorney has been disbarred that attorney will be unable to meet the standard quoted above. Because of this the board has determined that the disbarment should be retroactive to 1984 and that in 1989 respondent may attempt to meet the above standard for reinstatement if he wishes to do so.

## RECOMMENDATION

For the foregoing reasons the disciplinary board recommends that respondent, [     ], be disbarred retroactive to March 16, 1984, the date when respondent was suspended from the practice of law by order of the Supreme Court of Pennsylvania.

The board further recommends that the court direct that the expenses incurred in the investigation and prosecution of this proceeding be paid by respondent pursuant to rule 208(g)(1) Pa.R.D.E.

Mr. Douglas did not participate in the adjudication.

## ORDER

And now, July 15, 1988, upon consideration of the report and recommendations of the disciplinary board dated January 21, 1988, it is hereby ordered that [respondent] be and he is disbarred from the bar of this commonwealth, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.